COMMONWEALTH *vs.* CRAIG MARTIN.

Barnstable. December 6, 1993. - March 2, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Rape. Evidence*, Sexual conduct, Relevancy and materiality, Prior incon-
sistent statement, Identification. *Witness*, Victim. *Constitutional Law*,
Public trial, Freedom of speech and press. *Practice, Criminal*, Public
trial.

At a criminal trial, the admission of a witness's testimony concerning her
suspicion that the defendant acted in a particular way was error requir-
ing reversal of the defendant's convictions. [189-191]

Discussion of constitutional issues concerning the exclusion of members of
the press and the general public from the courtroom during a criminal
trial involving sexual offenses where the complainant is a minor. [191-
194]

The court announced a rule that criminal proceedings may be closed to the
public under G. L. c. 278, § 16A, only on a determination by the judge
that closure is necessary to prevent psychological harm to a minor com-
plaining witness [194], and that the judge's determination must satisfy
the four requirements articulated by the Supreme Court of the United
States in *Waller* v. *Georgia*, 467 U.S. 39 (1984), namely, that the party
seeking closure must advance an overriding interest [194-195], closure
must be no broader than necessary [195], the judge must consider rea-
sonable alternatives [195], and the judge must make findings adequate
to support closure [195].

At the trial of indictments for indecent assault and battery on a child
under the age of fourteen years and forcible rape of a child under the
age of sixteen years, the judge's findings fell short of what is constitu-
tionally required for closure of the proceedings to the public pursuant
to G. L. c. 278, § 16A. [196]

Where the complaining witness at a rape trial testified on cross-examina-
tion that she was unable to remember what her assailant was wearing
at the time of the alleged crime, the complainant's testimony at a prob-
able cause hearing, in which she testified that her assailant was wearing
jeans, was not admissible either as a prior inconsistent statement [196-
197], or as evidence of an extra-judicial identification [197-198].

INDICTMENTS found and returned in the Superior Court Department on November 20, 1990.

The cases were tried before *Gerald F. O'Neill, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer,* Committee for Public Counsel Services (*Charles L. Johnson,* Committee for Public Counsel Services, with him) for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Craig Martin, appeals from his convictions of indecent assault and battery on a child under the age of fourteen years, and of forcible rape of a child under the age of sixteen years. The defendant argues error in the closing of his trial to the public during the testimony of the minor complainant, in precluding the admission of certain evidence, and in allowing a witness to testify concerning her suspicion that the defendant had committed the crimes. We transferred the case to this court on our own motion. We reverse the convictions and remand for a new trial on the ground that testimony concerning a witness's suspicions that the defendant acted in a particular way was erroneously admitted and prejudicial. The facts follow.

On October 12, 1990, the complainant, then thirteen years old, accompanied by her girl friend, Beth Ashley, attended a party at the home of Christine Ashley, Beth's sister, who lived with the defendant and his younger sister in Hyannis. The complainant consumed beer and smoked marihuana at the party. She later became dizzy and physically ill and retired to the master bedroom, where she fell asleep on a couch.

At some point that night, the complainant awoke to find two males standing next to her in the bedroom. One of the men identified himself as "Craig." The other man was Carlos Lopez.[1] The men removed the complainant's pants and un-

---

[1] Lopez was indicted on the same charges as the defendant. At trial, he testified for the Commonwealth.

dergarments, and she was led outside by the man who identified himself as Craig. He took her to a tent in the defendant's back yard, and there he raped her. Thereafter, he brought her to a neighboring yard and forced her to perform fellatio. He then instructed her to return to the house and get dressed.

Beth Ashley and Christine Ashley had noticed that the complainant was not in the bedroom, and that both the defendant and Lopez were absent from the party. They went outside with the defendant's sister and repeatedly called for the missing parties. After the defendant and Lopez returned, the women went back into the house. Christine then found the complainant on the bedroom floor. The complainant was dressed, but her pants were unzippered and she was not wearing shoes. Christine physically ousted the complainant from the house. Christine thereafter argued with the defendant.

1. *Christine Ashley's testimony.* Christine Ashley, the defendant's girl friend, testified for the Commonwealth. During direct examination, she testified that on discovering the complainant on her return to the bedroom, she had "instincts that something happened," so she forcibly removed the complainant from the house. Her instincts were "[t]hat [the defendant] had something to do with her." Defense counsel objected to further questions. The judge overruled the objection. The witness thereafter responded affirmatively to the following question: "And you had suspicion that Craig had something sexually to do with [the complainant]?" This testimony was allowed.[2]

The defendant argues that the judge erred in overruling defense counsel's objection to questions concerning Christine's instincts and suspicions about the defendant's conduct. The defendant further argues that his objection was timely,

---

[2]Christine Ashley testified as follows:

THE PROSECUTOR: "And did you have a fight with [the complainant]?"

THE WITNESS: "Well, yeah."

THE PROSECUTOR: "And what was that fight about?"

and that admission of the testimony was prejudicial and warrants reversal. We agree.

Christine had no first-hand knowledge of any relation between the defendant and the complainant. Her instinct or suspicion that the defendant had "something [sexually] to do" with the complainant was not based in fact, and was therefore irrelevant. See *Commonwealth* v. *Lennon*, 399 Mass. 443, 445-446 (1987), and cases cited. The testimony was thus erroneously admitted. We cannot say that the error was harmless, as the prosecutor repeatedly discussed the tes-

| | |
|---|---|
| THE WITNESS: | "When I had went to look for [the complainant] in the back yard and in the front of the house, she was not nowhere to be found. When I went out to the front and saw [the defendant] . . . I went back into the bedroom with [the defendant], and he was asking what was wrong. I told him that [the complainant] was gone." "He went into the bedroom, and she was on the floor crying. She was back into my room, and I had asked her what was wrong; and she wouldn't answer me. She just said, 'I didn't do nothing. I didn't do nothing.' And I was drinking, and I had instincts that something happened. So, I kicked her out." |
| THE PROSECUTOR: | "When you say you had instincts that something had happened, what was that something?" |
| THE WITNESS: | "That [the defendant] had something to do with her." |
| THE PROSECUTOR: | "Something to do with her?" |
| THE WITNESS: | "Yeah." |
| THE PROSECUTOR: | "Like what?" |
| DEFENSE COUNSEL: | "Objection." |
| THE WITNESS: | "I don't know." |
| THE JUDGE: | "Overruled." |
| THE PROSECUTOR: | "What do you mean by something to do with her?" |
| THE WITNESS: | "I don't know." |
| THE PROSECUTOR: | "Do you mean sexually?" |
| THE WITNESS: | "Yep." |
| THE PROSECUTOR: | "And you had suspicion that [the defendant] had something sexually to do with [the complainant]?" |
| THE WITNESS: | "Yep." |

timony and stressed its importance to the jury during closing argument.[3]

The Commonwealth argues that defense counsel's objection to this testimony was untimely. We disagree. The witness first testified that she removed the complainant from the house because she had "instincts" that the defendant "had something to do with [the complainant]." Defense counsel objected when the Commonwealth asked what those instincts or suspicions were. It was then apparent that any response would be inadmissible. The objection was not untimely, and was sufficient to preserve the issue for appeal. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 573 (1985).

Accordingly, we reverse the convictions and remand this case for a new trial.

2. *G. L. c. 278, § 16A.* Prior to the complainant's testimony, the Commonwealth requested that the judge close the proceedings while the minor complainant testified, pursuant to G. L. c. 278, § 16A (1992 ed.). The Commonwealth argued that, because of the complainant's age and the nature of the crimes, it would be "very difficult for [her] to testify." The Commonwealth further explained that it had been difficult for the complainant to talk about the crimes "in private." Over defense counsel's objection, the judge ordered that the courtroom be closed during the testimony of the complaining witness.[4]

---

[3]In the Commonwealth's closing, the prosecutor stated: "[The witness], eight years co-habitating with this Defendant. She sees [the complainant] back in the room, proceeds to hit her, beats on her, pulls her by the hair and throws her out of the house. She sees [the defendant], and she tells you she had an instinct something happened. When pressed, something sexual occurred between him and [the complainant]. . . . I asked her, 'Why did you fight with him?' She said, 'Because I didn't believe him.' I suggest to you ladies and gentlemen, that it would be appropriate for the members of this jury to adopt [the witness's] evaluation of this Defendant's veracity."

[4]The trial judge stated: "Counsel accurately reflects [*Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596 (1982)]. It says this is to be determined on a case by case basis. Local newspapers have the support of the Court. What makes the issue closer is it's also necessary to protect the welfare of a minor victim. Among the elements to be weighed are the vic-

The defendant argues error. We discuss issues concerning closure of proceedings under G. L. c. 278, § 16A, as such issues are likely to arise subsequently in similar circumstances. Our examination is limited to § 16A as it applies to proceedings wherein minor complainants of sexual offenses are called to testify.[5]

Closing criminal proceedings from public attendance potentially implicates either of two rights guaranteed by the First and Sixth Amendments to the United States Constitution. The public in general has a First Amendment[6] right of access to criminal trials. See *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 603 (1982), rev'g 383 Mass. 838 (1981) (*Globe II*). This implied right is grounded in history and tradition, and serves the valuable purpose of permitting public participation in and scrutiny of the judicial process. *Id.* at 604-606. Similarly, criminal defendants have a right, provided expressly in the Sixth Amendment, to a public trial.[7] This right ensures fairness in criminal proceedings, en-

---

tim's age, psychological maturity, understanding the nature of the crime, desires of the victim, and the interest of the parents and relatives. In view of the nature of the allegations here and the desires of the alleged [victim], I am going to close the courtroom; and I'm going to save the Defendant's rights. . . . Members of the general public are excluded from the courtroom at this time unless you have an interest in this case. By that, I mean unless you are a witness, a member of the Defendant's family, a member of the family of the alleged victim, or court personnel. The courtroom is to be cleared. The rear doors are to be closed, and a court officer is [to be] stationed at the door."

[5]Our discussion addresses only those provisions of the United States Constitution which may be implicated by closed proceedings. We decline to examine whether and to what extent closure might affect provisions of our State Constitution, as no argument was presented on the issue. See *Globe Newspaper Co.* v. *Superior Court*, 379 Mass. 846, 854, rev'd, 449 U.S. 894 (1980) (*Globe I*).

[6]The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

[7]The Sixth Amendment to the United States Constitution states in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

courages individuals to come forward and testify, and discourages false testimony. See *Waller* v. *Georgia*, 467 U.S. 39, 46 (1984).

These two constitutional rights, however invaluable, are not absolute. In limited circumstances, the press and public may be barred from criminal proceedings. See *Globe II*, *supra* at 606-607. Because of the stature of the rights at stake, however, "it must be shown that [closure] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that government interest." *Id.* at 607.[8]

General Laws c. 278, § 16A, states in part that, "[a]t the trial of a complaint or indictment for rape, incest, carnal abuse or other crime involving sex, where a minor under eighteen years of age is the person upon, with or against whom the crime is alleged to have been committed . . . the presiding justice shall exclude the general public from the court room." As written, § 16A mandates closure of proceedings during the testimony of minor complainants of sexual offenses. *Globe Newspaper Co.* v. *Superior Court*, 379 Mass. 846, 861, rev'd, 449 U.S. 894 (1980) (*Globe I*). The purpose of this section "is to encourage young victims of sexual offenses to come forward; once they have come forward, the statute is designed to preserve their ability to testify by protecting them from undue psychological harm at trial." *Id.* at 860.

The United States Supreme Court has recognized as a compelling State interest the psychological well being of minor complainants of rape and other sexual offenses. *Globe II*, *supra* at 607. However, "as compelling as that interest is, it

---

[8]Although the two rights at issue serve to protect two distinct classes — the First Amendment right protects the public and the press, the Sixth Amendment right protects criminal defendants — the constitutional analysis as to each is the same. See *Waller* v. *Georgia*, 467 U.S. 39, 46-47 (1984) ("[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. . . . [U]nder the Sixth Amendment any closure . . . must meet the [First Amendment] tests set out in [*Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501 (1984)] and its predecessors").

does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest." *Globe II, supra* at 607-608. Thus, the Supreme Court ruled that the requirement of mandatory closure in § 16A is unconstitutional. *Id.* at 610-611 & n.27 ("We emphasize that our holding is a narrow one: that a rule of mandatory closure respecting the testimony of minor sex victims is constitutionally infirm"). Trial judges must therefore determine on a case-by-case basis "whether closure. is necessary to protect the welfare of a minor victim." *Id.* at 608.

Accordingly, criminal proceedings in this Commonwealth may be closed to the public under G. L. c. 278, § 16A, only on a determination by a trial judge that closure is necessary to prevent psychological harm or trauma to the minor witness. In making this determination, the judge shall consider the age, maturity, and desires of the complainant, the nature of the alleged crime, and the interests of the complainant's parents and relatives. *Id.* at 608. Further, the determination must satisfy four requirements articulated by the Supreme Court: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Waller, supra* at 48. We now examine each of these prescriptions to determine what exactly is required of the trial courts of the Commonwealth when ordering proceedings closed during minor complainant testimony under G. L. c. 278, § 16A.

a. *The party seeking closure must advance an overriding interest.* As noted, a minor complainant's psychological well being is a compelling interest which may warrant closure. Closure is appropriate, however, only when that interest is at stake. Thus, the party seeking closure must present evidence of a significant risk of psychological harm or trauma to the minor complainant if required to testify in open court. Mere assertions of counsel are insufficient. See *Davis v. Reynolds,*

890 F.2d 1105, 1110 (10th Cir. 1989); *State* v. *McRae*, 494 N.W.2d 252, 258-259 (Minn. 1992); *People* v. *Clemons*, 78 N.Y.2d 48, 52-53 (1991). Counsel may present the following types of evidence to support a finding of a risk of harm: expert psychological evidence; testimony of the complainant; testimony of a victim-witness advocate who is familiar with the witness; or the testimony of a parent, guardian, or other family member. This list, of course, is not exhaustive, and the judge's personal observations of the witness may also be valuable. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 623-624 (1989).

b. *Closure must be no broader than necessary.* Any closure ordered under § 16A must be no broader than necessary to protect the well being of the minor witness. Thus, typically, proceedings may be closed only for the duration of the testimony, see *Waller, supra* at 49 (closure of seven-day suppression hearing too broad where tape recordings of sensitive material sought to· be protected from public exposure lasted ·only two and one-half hours), and they may not be closed to the family and close friends of the defendant. See *Commonwealth* v. *Marshall*, 356 Mass. 432, 435 (1969).

c. *The judge must consider reasonable alternatives.* To the extent that reasonable alternatives to closure may be available, they must be considered by the judge. The parties both supporting and opposing a closure order should present all such alternatives to the judge for consideration. If any reasonable alternative to closure is not expressly considered by the judge in reaching a decision to order closure, the order shall be vacated. See, e.g., *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 513 (1984).

d. *The judge must make findings adequate to support closure.* The judge, after hearing evidence on the issue, must make subsidiary findings of fact sufficient to support his ultimate finding that closure is necessary. The findings must pertain to the particular minor complainant, not merely to minor complainants in general, see *Davis, supra* at 1110-1111, and they must be supported by the record to allow review by appellate courts. See *McRae, supra* at 259.

We examine the judge's order of closure in the present case in light of the foregoing rules. The Commonwealth did not sufficiently show that the minor witness's psychological well being was at risk. The prosecutor merely stated to the judge that it had been difficult for the complainant to discuss the matter with him in private, and that it "would be overwhelming for her to properly testify." Again, assertions of counsel are insufficient to support an order for closure. If we assume for the purpose of this analysis, however, that closure was warranted, the closure does not appear broader than necessary, as it lasted only for the duration of the complainant's testimony and did not exclude the defendant's close relatives and friends. Further, no reasonable alternatives to closure were presented by the defendant, and none is otherwise apparent. The judge's findings, however, are deficient. Indeed, no findings were actually made as to the particular complainant; the judge merely listed the various factors he should consider, then stated: "In view of the nature of the allegations here and the desires of the alleged [victim], I am going to close the courtroom." This falls short of that which is required for the constitutional closure of proceedings. See *Clemons, supra* at 52-53, and cases cited.

Generally, the appropriate relief for violations of the constitutional right to a public trial is a new trial. See *Waller, supra* at 49. "A showing of prejudice is not necessary for reversal of a conviction which is not the result of public proceedings." *Marshall, supra* at 435, and cases cited. Because we reverse on another ground, however, we need not order reversal on this basis.

3. *Excluded prior testimony.* During direct examination of the complainant, she identified the defendant as the man who raped her. On cross-examination, the complainant stated that she could not remember what her assailant was wearing at the time of the alleged crime. Defense counsel attempted to refresh the witness's recollection by having her read a transcription of her testimony at the probable cause hearing, where she had testified that her assailant had been wearing jeans. Even after reading this testimony, however, she could

not remember what her assailant had been wearing. She further testified that she was "not sure" that what she had been shown was in fact her testimony. The following day, defense counsel requested that the complainant's testimony at the probable cause hearing be admitted in evidence as either a prior inconsistent statement or a "prior recollection recorded." The judge denied the request.

The defendant concedes that the complainant's testimony at the probable cause hearing was properly not admitted as "prior recollection recorded." The defendant asserts, however, that it is admissible as substantive evidence, because it qualifies as either a prior inconsistent statement or an extrajudicial identification. Despite the fact that the testimony was not offered on the latter basis, we discuss both theories, as the issue likely will arise at retrial.

We discuss first whether the complainant's prior testimony should be admitted as a prior inconsistent statement. As a general rule, "there is no inconsistency between a present failure of memory on the witness stand and a past existence of memory." P.J. Liacos, Massachusetts Evidence § 6.6.2, at 271-272 (6th ed. 1994), and cases cited. Where a witness has no present memory as to the substance of the prior statement, its admissibility generally is precluded because opposing counsel would not have an opportunity for meaningful cross-examination of the witness at trial. See *Commonwealth v. Daye*, 393 Mass. 55, 73 (1984). In the present case, the complainant testified at trial that she could not remember what her assailant was wearing at the time of the crime; the defendant offered in evidence the complainant's testimony at the probable cause hearing that her assailant had been wearing jeans. The complainant's lack of memory at trial is not inconsistent with her prior testimony. Thus, the prior testimony appropriately was not admitted.[9]

---

[9]In *Commonwealth* v. *Daye*, 393 Mass. 55, 73 n.17 (1984), we left open the issue "whether, when the circumstances at trial indicate that a witness is falsifying a lack of memory, a judge may admit the statement as 'inconsistent' with the claim of lack of memory." Because there was no argu-

We discuss next whether the complainant's testimony at the probable cause hearing otherwise is admissible for use as substantive evidence as an extrajudicial identification. On the record before us, it is not. The complainant did not establish her "extrajudicial identification" at trial, nor did she sufficiently adopt it during her testimony. See *Daye, supra* at 61. To the contrary, she testified that she was "not sure" that she had ever given the description of her assailant's clothing. Thus, "there [was] a dispute not only as to the accuracy of [the] pretrial identification, but also as to whether the identification was in fact made, [and, therefore,] 'the evidential value of the prior identification [was] almost completely dissipated.' " *Id.*, quoting *Commonwealth* v. *Swenson*, 368 Mass. 268, 273 n.3 (1975). Furthermore, we have stated that a party "may not circumvent limitations on the probative use of prior inconsistent statements by seeking to introduce a prior inconsistent statement as a statement of identification under [the rule] . . . governing probative use of extrajudicial identifications." *Daye, supra* at 61 n.9.

Thus, on the record before us, the complainant's testimony at the probable cause hearing was not admissible.

4. *Conclusion.* The judgments are reversed, the verdicts set aside, and this case is remanded for a new trial in accordance with this opinion.

*So ordered.*

---

ment posed to the trial judge and to this court on the issue, we decline to address it.