Commonwealth *vs.* Craig S. Martin.

No. 93-P-1591.

Barnstable. March 7, 1995. - August 4, 1995.

Present: Kass, Jacobs, & Greenberg, JJ.

*Constitutional Law*, Public trial. *Practice, Criminal*, Public trial, Instructions to jury. *Evidence*, Consciousness of guilt. *Witness*, Intimidation.

At a criminal trial, there was no error in the judge's order excluding persons generally from the courtroom, including the defendant's family and supporters, for a brief voir dire to explore the sources and nature of a witness's concerns about intimidation. [46-47]

At a criminal trial, evidence of intimidation of the witness then testifying justified, in the interest of a fair trial, the judge's exclusion of persons generally from the courtroom, including the defendant's mother and supporters (but not the press), during the reopened direct testimony of the witness. [47-49]

In the circumstances of the trial of indictments, the judge properly exercised her discretion not to give an instruction to the jury on consciousness of guilt. [49-50]

INDICTMENT found and returned in the Superior Court Department on May 7, 1991.

The case was tried before *Elizabeth J. Dolan*, J.

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. After a trial with a codefendant,[1] the defendant was convicted by a Superior Court jury of breaking and entering in the daytime (G. L. c. 266, § 18). A conviction for larceny in a building (G. L. c. 266, § 20) was filed and is not

---

[1]The appeal of the codefendant, Niles L. Hinckley, to this court resulted in an unpublished memorandum decision, 38 Mass. App. Ct. 1103 (1995), upholding judgments against him. Further appellate review has been granted by the Supreme Judicial Court, 419 Mass. 1110 (1995).

before us.[2] The charges arose from allegations that the defendant broke into the office of the Yarmouth town dump and stole a safe. Because the two issues raised in this appeal have a narrow focus, we will extract relevant facts from the record as needed.

1. *Temporary closure of the courtroom.* Before resuming the testimony of a prosecution witness[3] on the second day of trial, the judge, referring to the provisions of *Globe Newspaper Co.* v. *Superior Ct.*, 457 U.S. 596 (1982), and in the absence of the jury, stated that because of information before the court "relative to [that witness's] concerns about intimidation," and in order to conduct an "appropriate hearing," she would close the courtroom and that "all persons, unless they are employees of the office of the district attorney or employees of defense counsel, are to be removed from the courtroom and public entrances locked." Defense counsel stated, "The defendant wanted to know if his mother could remain," and the judge answered, "Not at this time." Counsel made no objection. A voir dire examination of the witness by the prosecutor covering less than five pages of transcript then was conducted.

In a discussion with counsel and the prosecutor following the voir dire examination, the judge, before deciding to allow the Commonwealth to "reopen certain areas" of the witness's testimony, noted that James Martin, a brother of the defendant, apparently had pleaded guilty to witness intimidation,

---

[2]The defendant asserts the sentencing transcript is "devoid of any evidence that [he] consented to the filing," that the docket entry "appears to be erroneous," and that the conviction therefore is before us in this appeal. However, the record is also devoid of any indication that the defendant objected to the filing. In the circumstances, and in view of our decision on the merits, we need not reach the larceny conviction. See *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 703-704 (1986). We note that the defendant makes no argument particularized to the larceny conviction.

[3]The witness began her testimony on the first day of trial and then was cross-examined by counsel for the defendant. The prosecutor was allowed to ask her leading questions because the witness had difficulty in recalling certain events. During a jury recess the prosecutor stated that the witness was "quite obviously nervous" and "quite obviously scared." No disagreement concerning the witness's demeanor appears in the record.

that a District Court determination of intimidation by the defendant had been appealed, and that both of these proceedings involved intimidation of the present witness along with others. Before asking the witness to wait outside, the judge indicated that defense counsel could make further inquiry of the "state of mind" of the witness. Neither defense counsel responded. The judge expressed her perception that the witness's "lack of ability to recollect facts" was based on fear related to the intimidation to which she testified at the voir dire hearing.[4] The judge then announced she would allow the Commonwealth to "reopen and redirect on [the witness]" and further would exercise her discretion to continue the exclusion of all persons with the exception of any employees of the two defense counsel, employees of the district attorney, court employees, and "the press."[5] She denied the request of defense counsel to allow the defendant's mother "to sit in the courtroom," notwithstanding his claim that there had been no evidence presented that the defendant's mother "intimidated" or otherwise made any remarks to the witness. No further request or any objection appears in the record. The witness then was recalled to testify before the jury.

The defendant argues that the exclusion of his mother from the voir dire and during the reopened testimony of the witness violated his constitutional right to a public trial whether or not the judge was justified in excluding others.

---

[4]During the voir dire hearing, the witness stated that some of her testimony on the first day of trial was not entirely truthful, and that she felt "[s]cared" when the defendant's brother, James, in the back of the courtroom was pointing at her that day, and two women (one of them the defendant's girlfriend) were "looking at me hard. I mean, scaring me, scaring me from testifying." She also acknowledged that she had been approached earlier in the year by the defendant and another man and also by the defendant and his brother, James, when the defendant asked her to testify that the codefendant, Niles Hinckley, acted alone.

[5]The record does not reveal whether media representatives or any members of the public were present at any of the relevant times before or during the closing of the courtroom. In view of the judge's not excluding "the press" and the fact that the judge's order was not made under G. L. c. 278, § 16A, we do not consider expressly the public exclusion issues raised in Globe Newspaper Co. v. Superior Ct., supra, and related cases. See Commonwealth v. McCann, 22 Mass. App. Ct. 953, 955 (1986).

Our courts have "always recognized the right of a criminal defendant to be tried in an open court." *Commonwealth* v. *Stetson*, 384 Mass. 545, 549 (1981). "Closing criminal proceedings from public attendance potentially implicates either of two rights guaranteed by the First and Sixth Amendments to the United States Constitution." *Commonwealth* v. *Martin*, 417 Mass. 187, 192 (1994). "These two constitutional rights, however invaluable, are not absolute." *Id.* at 193. See also *Globe Newspaper Co.* v. *Superior Ct.*, 457 U.S. at 606; *Commonwealth* v. *Bohmer*, 374 Mass. 368, 380 (1978). While "the two rights . . . serve to protect two distinct classes — the First Amendment right protects the public and the press, the Sixth Amendment protects criminal defendants — the constitutional analysis as to each is the same. See *Waller* v. *Georgia*, 467 U.S. 39, 46-47 (1984). . . ." *Commonwealth* v. *Martin*, *supra* at 193 n.8. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller* v. *Georgia*, *supra* at 48.

As to the brief voir dire hearing, see *Commonwealth* v. *Stetson*, *supra* at 548-549, there was nothing improper in the judge's order excluding persons generally from the courtroom, including the defendant's family and supporters, in order to explore the sources and nature of the witness's concerns about intimidation. However, in order to justify continued closing of the courtroom, and in determining whether "the right to an open trial may give way in certain cases to other rights or interests," *Waller* v. *Georgia*, *supra* at 45, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

*Press-Enterprise Co.* v. *Superior Ct.,* 464 U.S. 501, 510 (1984). *Waller* v. *Georgia, supra* at 45.

The defendant does not argue error based upon the admission of the reopened testimony,[6] the duration of the closure, or the exclusion of certain persons, but only that the exclusion of his mother was improper. While we think the judge should have expressly rather than implicitly determined whether the witness would have had difficulty testifying with the defendant's mother present, it was not constitutional error requiring a new trial not to do so in the particular circumstances of recent intimidation by other family members and persons sympathetic to the defendant. See *Fayerweather* v. *Moran,* 749 F. Supp. 43, 45 (D.R.I. 1990) ("The Sixth Amendment does not guarantee a defendant an audience. It merely guarantees that members of the public will have a right to attend a defendant's trial unless there are compelling reasons for excluding them"). We do not believe that *Commonwealth* v. *Marshall,* 356 Mass. 432 (1969), dictates that the defendant's convictions be reversed, as he argues, since that case involved the exclusion of all spectators, including the relatives of the defendant, from the entire trial. Compare *Woods* v. *Kuhlmann,* 977 F.2d 74, 77 (2d Cir. 1992) (affirming order excluding all members of the family of person who threatened witness during testimony of that witness).

In applying the *Waller* v. *Georgia* requirements, we first must determine whether there was an overriding interest which likely would have been prejudiced if the courtroom had remained open. The authority to exclude spectators whose presence intimidates a witness has been recognized as a corollary to a judge's power to maintain order in court proceedings to assure that criminal trials be fair and just. *Commonwealth* v. *Bohmer,* 374 Mass. at 380. Here, the evidence of intimidation constituted an overriding factor justifying, in the interests of a fair trial, the limited closure imposed by the judge. Moreover, where there was only a temporary and par-

---

[6]The defendant concedes that the testimony of the witness during the reopened direct examination did not substantially differ from the version of events she described during her first day of testimony.

tial closure of the courtroom for the reopened testimony of a single witness, and where members of "the press" were not excluded, we agree with the reasoning in *Woods* v. *Kuhlmann, supra* at 76, in accord with three other Federal circuits, that a "substantial reason" rather than an overriding interest may justify such a closure. We believe this approach to be supported by the Supreme Judicial Court's recognition of the psychological well-being of a minor complainant as constituting "a compelling interest which may warrant closure." *Commonwealth* v. *Martin*, 417 Mass. at 194.

Given the previous courtroom intimidation of the witness by the defendant's brother and two female spectators (see note 4, *supra*) the exclusion of the defendant's mother during the remaining testimony of that witness, was a reasonable, and not overly broad, measure to protect the integrity of the proceedings. Also, by opting to exclude all family members but not "the press" as an alternative to full closure, the judge appears to have given adequate consideration to and did not violate the third *Waller* requirement. Lastly, the judge's articulation on the record of the relationship between the witness's ability to recollect and the evidence of intimidation meets the *Waller* requirement of findings supporting the partial closure sufficient to permit review.

2. *Witness intimidation-consciousness of guilt instruction.* The defendant characterizes certain of the witness's recall testimony, including her explanation that intimidation was the reason for some untruthfulness in her earlier testimony, as having a prominence which was highly dramatic and enhanced by the closing of the courtroom. He argues that since evidence of threats or intimidation is admissible to demonstrate consciousness of guilt, see *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975), the trial judge should have given, sua sponte, an instruction pursuant to *Commonwealth* v. *Toney*, 385 Mass. 575, 584-585 & nn. 4-6 (1982). See *Commonwealth* v. *Cruz*, 416 Mass. 27, 29-30 (1993). The present case was tried before the *Cruz* decision and at a time when the *Toney* charge "was usually left to the sound discre-

tion of the judge." *Commonwealth* v. *Simmons*, 419 Mass. 426, 435 (1995). In view of a limiting instruction given during the witness's testimony at the request of counsel for the codefendant[7] and the focus on the witness's truthfulness, we do not agree that any issue of consciousness of guilt remained in the case requiring a *Toney* instruction. See *Commonwealth* v. *Simmons*, *supra* at 434-435. In light of substantial circumstantial evidence of the defendant's guilt, the judge, by responding as she did, and in not giving a *Toney* instruction sua sponte, exercised her discretion in a manner consistent with the "better practice" later articulated in *Commonwealth* v. *Simmons*, *supra* at 436.

*Judgment affirmed.*

---

[7]The judge stated in pertinent part: "[T]he witness . . . has indicated some reference to her state of mind as she was testifying [and certain questions asked to determine the basis for her state of mind] as to whether she was truthful or not truthful . . . and the reasons for it. . . . And as far as [the defendant] is concerned, whatever statements were elicited through the assistant district attorney is simply for the basis of permitting the witness to explain what her state of mind was or to give reasons for it, and [the defendant] is here specifically on trial on certain charges, and again, you cannot draw any negative inference against him on whatever came out through the questioning of this witness. It would strictly be whether or not he committed the acts complained of now here at trial."

Although not stated expressly as a consciousness of guilt instruction, "we shall not assume that jurors will slight strong and precise instructions" of this kind. *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970).