## Commonwealth *vs.* Robert J. Morganti, Jr.

Plymouth. October 8, 2013. - February 12, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Constitutional Law,* Public trial, Jury, Waiver of constitutional rights, Assistance of counsel. *Practice, Criminal,* Public trial, Empanelment of jury, Waiver, Assistance of counsel. *Jury and Jurors. Waiver.*

At a criminal trial, the closure of the court room for the entirety of the jury empanelment was not de minimis [100-101]; further, the failure of counsel, who was aware that the court room was closed to the public, to object to the closure constituted a waiver of the defendant's right to a public trial under the Sixth Amendment to the United States Constitution [101-103]; further, the decision of counsel not to object to the closure, in view of the professional norms at the time and the record of the practice and the acquiescence in the practice that was thoroughly established at the evidentiary hearing on the defendant's motion for a new trial, was well within the range of reasonable professional judgments applicable to his conduct, and therefore did not constitute ineffective assistance [103-105].

Indictment found and returned in the Superior Court Department on May 29, 1998.

Following review by this court, 455 Mass. 388 (2009), a motion for a new trial, filed on November 19, 2010, was heard by *Linda E. Giles,* J.

A request for leave to appeal was allowed by *Gants,* J., in the Supreme Judicial Court for the county of Suffolk.

*Donald A. Harwood* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

Cordy, J. On June 13, 2003, at the Superior Court in Brockton, the defendant was convicted by a jury of murder in the first degree for the shooting death of Anthony LoConte. During jury empanelment, the court officers closed the court room to all members of the public, as was the custom and practice at the time in that court. Among those excluded were Beverly Coco-

mile, Theresa Andrade, and Richard Cocomile, the defendant's mother, sister, and stepfather, respectively.[1] The defendant did not object to the court room closure, nor did he raise any claim relating to its closure in his direct appeal, which was decided in 2009. *Commonwealth* v. *Morganti*, 455 Mass. 388 (2009).

On November 19, 2010, after this court's ruling in *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94 (2010), that the right to a public trial under the Sixth Amendment to the United States Constitution extended to jury empanelment, the defendant filed a motion for a new trial, claiming that the closure of the court room was structural error necessitating reversal. After an evidentiary hearing, the motion judge, who was also the trial judge, found that the court room had been closed for the seventy-nine minutes that it took to empanel the jury, but she denied the defendant's motion on the grounds that the brevity of the closure made it de minimis.

On appeal, the defendant avers that the seventy-nine minute closure could not have been de minimis, and that it instead constituted structural error, requiring an automatic reversal of his conviction. Although we agree that the closure of a court room for the entire empanelment process is not de minimis, we affirm on other grounds. We conclude that the defendant waived his right to a public trial where his experienced trial counsel was aware of the closure and did not object. We further conclude that defense counsel's failure to raise such an objection did not fall "measurably below that which might be expected from an ordinary, fallible lawyer," *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), at the time, given the legal culture and practice in the Superior Court in Brockton (Brockton Superior Court) of acquiescence to the closure of the court room to facilitate jury empanelment. Thus, counsel was not ineffective, and the defendant's motion for new trial was properly denied.

1. *The court room closure.* Pursuant to the defendant's motion for new trial, the trial judge held an extensive evidentiary hearing in order to determine whether the court room was closed during the jury empanelment in this case. The hearing also encompassed more broadly the general practices of Brockton

---

[1]Because Beverly Cocomile and Richard Cocomile share the same last name, we use their first names in this opinion.

Superior Court court officers and defense counsel with regard to jury empanelments at around the time of the defendant's trial in 2003.

The defendant first presented testimony from Beverly, Andrade, and Richard. All three testified that they were present in the court room on the morning of June 3, 2003, while the judge acted on the parties' motions in limine. Unbeknownst to the judge, at 11:02 A.M., before the jury venire was brought into the court room, the three were asked by the court officers to leave the court room during the empanelment process.

With the court room cleared, the prospective jurors were brought in, where, ordinarily, they took up all the available seats. The process of jury empanelment continued by way of individual jury questioning at sidebar. Sixteen jurors were empanelled and the court room was reopened seventy-nine minutes after it was closed.

Attorney Kevin Reddington, the defendant's trial counsel, testified that he was aware that Beverly and Andrade were not present in the court room during the jury empanelment process, despite the fact that they had been present for every court hearing up until that point.[2] He attributed their absence to the longstanding practice in Brockton Superior Court of closing the court room during jury empanelment.

Reddington, an established and respected trial attorney, went on to testify that he was aware of this practice, as, at the time of trial, he had seen it repeatedly during his twenty-eight years of practicing criminal law in the Brockton Superior Court.[3] According to Reddington, "[t]he practice, custom and procedure on a routine basis was that when jurors were brought into the court room, due to the size and configuration of the court room, anyone that was not directly connected with the case, in other words, the defendant, obviously, and trial counsel for the government or for the defense, were told to leave and stand in the hallway during the jury selection process. Once the jurors were selected, the individuals were, of course, invited back in."

---

[2]Attorney Kevin Reddington testified that he occasionally told family members and spectators that they would have to vacate the court room during jury selection. He was unable to recall if he did so in this case.

[3]Reddington was admitted to the Massachusetts bar in 1975, and began practicing criminal law in the Brockton Superior Court immediately thereafter.

Although Reddington was aware of this practice, he had not objected to it at any point during his years of trying cases in the Brockton Superior Court.[4] Although he similarly was aware of his clients' Sixth Amendment right to a public trial, he had never considered that the right might extend to jury empanelment. He understood that the court room was small, and that all of the seating was taken by the jury venire. Although he testified that he had no tactical reasons not to object, he explained that in acquiescing to closing the court room during jury empanelment, "we all, in our efforts to have an orderly empanelment process, and due again to the small configuration of the courtrooms, just went with the flow."

The defendant also offered testimony from two other experienced criminal defense attorneys who practiced extensively in the Brockton Superior Court but never had objected to the closures: Attorney John Darrell and Attorney Joseph Krowski. Darrell, the attorney in charge of the Plymouth County office of the Committee for Public Counsel Services (CPCS) during the time in question, testified that the closure of the court room during empanelment was a "culture,"[5] and that he and other defense attorneys were a part of the "culture." He routinely told family members of his clients that they could not stay in the court room during empanelment, never objected to their exclusion in any trial, and made no effort to change the practice.

Krowski agreed that there was an established practice of closures during jury empanelment at the Brockton Superior Court throughout his extensive legal career.[6] He reiterated that

---

[4]After the decision by the United States Court of Appeals for the First Circuit in *Owens* v. *United States*, 483 F.3d 48 (1st Cir. 2007), holding that the right to a public trial extended to jury empanelment, Reddington began a practice of objecting if the court room was closed during empanelment. He noted, however, that after this court's decision in *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010), the practice in the Brockton Superior Court changed and court rooms were held open during jury selection.

[5]Attorney John Darrell was admitted to the Massachusetts bar in 1981, and practiced criminal law in the Brockton Superior Court until his retirement in 2009. He worked as a trial attorney for the Committee for Public Counsel Services (CPCS) before becoming attorney in charge of the Plymouth County CPCS office.

[6]Attorney Joseph Krowski was admitted to the Massachusetts bar in 1977. He is a self-employed attorney who has tried, by his own account, "a couple hundred" criminal cases in the Brockton Superior Court.

the closures were due to the small size of the court room, and the need to fill all available seats with prospective jurors. While he was fully aware of the Sixth Amendment right to a public trial, he too testified that he was not aware that the right extended to jury empanelment until 2007, when he spoke with counsel from the *Cohen* trial, at which objections to court room closure during jury empanelment were raised. See *Cohen (No. 1)*, 456 Mass. at 118. Krowski testified that he never had objected to the closure of the court room in the Brockton Superior Court prior to 2007, and stated, "I just thought that [closure during empanelment] was protocol. I had seen it for so many years, exclusion of the public from jury selection, that it just didn't occur to me that it presented a problem."

At the conclusion of the evidentiary hearing, the Commonwealth argued that the defendant waived his claim of error by failing to object to it at trial. The Commonwealth further argued that, even if the error were not waived, the closure did not violate the defendant's Sixth Amendment right because it was de minimis.

The judge concluded that the Commonwealth could not meet its burden of establishing a waiver, because the defendant had not been advised of his right to a public trial, and thus could not have waived that right knowingly. In so ruling, she relied on *Commonwealth v. Alebord*, 80 Mass. App. Ct. 432, 438-439 (2011) (Commonwealth must establish defendant knowingly waived right; silence not sufficient to establish knowing waiver).[7]

Regardless of the lack of waiver, the judge concluded that the defendant's Sixth Amendment rights were not violated because the closure was de minimis. In so concluding, she noted that the court room was closed for only seventy-nine minutes of a ten-day trial, that the voir dire activity at sidebar would have been inaudible to spectators, and that the defendant's lack of objection suggested that he deemed the proceedings to be inconsequential. His motion for a new trial was thus denied.

2. *Discussion.* The Sixth Amendment to the United States

---

[7]This court has since held, in *Commonwealth v. Lavoie*, 464 Mass. 83, 88-89, cert. denied, 133 S. Ct. 2356 (2013), that defense counsel by his or her actions may waive the right to a public trial during jury empanelment without the defendant's express consent.

Constitution guarantees all criminal defendants "the right to a speedy and public trial." See *Waller* v. *Georgia*, 467 U.S. 39, 46 (1984). The right to a public trial extends to the jury selection process. *Presley* v. *Georgia*, 558 U.S. 209, 213 (2010). *Owens* v. *United States*, 483 F.3d 48, 66 (1st Cir. 2007). *Cohen (No. 1)*, 456 Mass. at 106. "Conducting jury selection in open court permits members of the public to observe trial proceedings and promotes fairness in the judicial system." *Commonwealth* v. *Lavoie*, 464 Mass. 83, 86, cert. denied, 133 S. Ct. 2356 (2013).

There is no doubt, and indeed no dispute between the parties, that the seventy-nine minute exclusion of the public during jury voir dire constituted a closure.[8] We do not agree that the closure of the court room for the entirety of the jury empanelment was "de minimis," even if lasting for only seventy-nine minutes. See *United States* v. *Gupta*, 699 F.3d 682, 689 (2012) (excluding public for all of voir dire without justification grounded in record is not trivial). Consequently, we turn to the arguments of the parties, focusing first on the question whether the defendant, through the acquiescence of counsel, waived his right to an open court room during the empanelment, and second, if so, whether defense counsel's action constituted ineffective assistance.

It is well settled that the violation of a defendant's Sixth Amendment right to a public trial is structural error requiring reversal. See *United States* v. *Marcus*, 560 U.S. 258, 263 (2010), citing *Waller*, 467 U.S. 39 (limited class of errors deemed "structural" include violation of right to public trial); *Cohen (No. 1)*, 456 Mass. at 105 (in determining whether right to public trial was violated, court cognizant that such violation is "structural error and not susceptible to harmless error analysis" [citations omitted]). However, even structural error "is subject

---

[8] In limited circumstances, a judge may bar spectators from portions of a criminal trial. *Commonwealth* v. *Martin*, 417 Mass. 187, 193 (1994). To do so, a judge must make a case-specific determination that closure is necessary, satisfying four requirements: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Id.* at 194, quoting *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984). No such findings were made in this case.

to the doctrine of waiver." See *id.* at 105-106; *Mains* v. *Commonwealth*, 433 Mass. 30, 33 n.3 (2000) (deficient reasonable doubt instruction is structural error that is subject to waiver). The defendant himself need not consent to a waiver of his right to an open court room during the jury empanelment process; trial counsel may waive the right on his own as a tactical decision without informing his client. *Lavoie*, 464 Mass. at 88-89, citing *Gonzalez* v. *United States*, 553 U.S. 242, 249-250 (2008). Further, the right to a public trial may be procedurally waived by a failure to lodge a timely objection to the offending error. See *Hatcher* v. *Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001), cert. denied, 536 U.S. 926 (2002) (structural error analysis inapplicable to State court conviction where issue not preserved by objection); *Lavoie*, 464 Mass. at 88 (right to public trial waived where counsel decided not to object to closure); *Commonwealth* v. *Dyer*, 460 Mass. 728, 736-737 & nn.7-8 (2011), cert. denied, 132 S. Ct. 2693 (2012) (counsel and defendant waived error when they did not object to conducting voir dire in judge's chambers, where public was excluded); *Commonwealth* v. *Horton*, 434 Mass. 823, 832 (2001) (waiver where counsel asked for individual voir dire and never objected to questioning in the deliberation room). See also *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 314 n.3 (2009) (holding that right to confrontation may be waived by failure to object, and that States may adopt procedural rules governing the exercise of such objections). Contrast *Presley*, 558 U.S. at 210 (error preserved by objection); *Waller*, 467 U.S. at 42 (same); *Cohen (No. 1)*, 456 Mass. at 100 (same).

In the present circumstances, where defense counsel was aware that the court room was closed to the public to facilitate jury empanelment and did not object, we conclude that the defendant's right to a public trial during that portion of the proceedings has been waived. See *Commonwealth* v. *Wells*, 360 Mass. 846, 846 (1971) (competent counsel acquiesced to exclusion of public where no exception taken). To conclude otherwise would tear the fabric of our well-established waiver jurisprudence that "a defendant must raise a claim of error at the first available opportunity." *Commonwealth* v. *Randolph*, 438 Mass. 290, 294

(2002). "This requirement serves a dual purpose: it protects society's interest in the finality of its judicial decisions, *Commonwealth* v. *Amirault*, 424 Mass. 618, 637 (1997) . . . , and promotes judicial efficiency, *Commonwealth* v. *Pisa*, 384 Mass. 362, 366 (1981)." *Id.*

If an error is waived due to a failure of trial counsel to object, we still may have occasion to review that error in the postconviction context of a challenge to trial counsel's effectiveness in failing to raise the objection. *Commonwealth* v. *Hardy*, 464 Mass. 660, 665, cert. denied, 134 S. Ct. 248 (2013). See *Owens*, 483 F.3d at 63 (defendant "procedurally defaulted his public trial claim by failing to object to the courtroom closure at trial and failing to preserve the objection on appeal," resulting in ineffective assistance analysis). Consequently, we proceed to that analysis.

Where a defendant attributes the failure to preserve a claim to the ineffective assistance of counsel, "we use the ineffectiveness of counsel standard set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974)." *Lavoie*, 464 Mass. at 89, quoting *Commonwealth* v. *Azar*, 435 Mass. 675, 686-687 (2002). "Counsel is ineffective where his conduct falls 'below that which might be expected from an ordinary fallible lawyer' and prejudices the defendant by depriving him 'of an otherwise available, substantial ground of defence.' " *Lavoie*, 464 Mass. at 89, quoting *Saferian*, 366 Mass. at 96. In evaluating the conduct of counsel, it "must be measured against that of an 'ordinary fallible lawyer' . . . at the time of the alleged professional negligence, and not with the advantage of hindsight." *Commonwealth* v. *Drew*, 447 Mass. 635, 641 (2006), cert. denied, 550 U.S. 943 (2007) (rejecting application of 1999 standards to performance of counsel appointed in 1980). Cf. *Commonwealth* v. *Clarke*, 460 Mass. 30, 43 (2011) (concluding that right to effective assistance of counsel after 1996 included right to accurate advice as to deportation consequences of guilty plea, where for at least fifteen years professional norms have imposed that obligation on counsel). We look to whether the conduct fell within a range of professionally reasonable judgments based on the professional norms as they existed at the time. *Strickland* v. *Washington*, 466 U.S. 668, 687-688 (1984). The measure we

use in assessing attorney conduct is an objective one. See *Hardy*, 464 Mass. at 665; *Saferian*, 366 Mass. at 96.

As was made apparent to the judge at the evidentiary hearing, the well-known practice in the Brockton Superior Court at the time of trial was to close the court room to facilitate the jury empanelment process. Three established, respected, and experienced defense attorneys testified to this practice and the defense bar's acquiescence to it. Reddington, Darrell, and Krowski all testified that they were fully aware of the practice of closing the court room for jury empanelment from the beginning of their careers until 2007. All three attorneys were aware of their clients' Sixth Amendment right to a public trial, yet none of them objected until 2007 when the issue began to emerge in cases tried outside Plymouth County. See *Cohen (No. 1)*, 456 Mass. at 98. Darrell described the closures as a "culture" and conceded that he and other defense attorneys were a part of that culture. Krowski added that, in his memory, the court room was closed because there was not enough available seating for the prospective jurors and spectators. Reddington's testimony echoed that of his brother counsel.

The reasons for the acquiescence of counsel were also apparent. Reddington testified, as an explanation for his policy against objecting, that he shared the desire to have an orderly empanelment process. It was apparent that he was more focused on selecting a jury, usually by means of individual juror questioning at sidebar, rather than keeping an eye on what might be going on in a court room overcrowded with prospective jurors and a client's friends and family. Simply put, Reddington is a highly capable defense attorney who did not view the closure of the court room as inconsistent with the goals of selecting a fair and impartial jury for his clients.

Although Reddington avers that he did not consider the possibility that the right to a public trial encompassed jury selection, the test for ineffective assistance of counsel is an objective one. In view of the professional norms at the time, and the record of the practice and the acquiescence in the practice that was thoroughly established at the evidentiary hearing, his decision not to object was well within the range of reasonable professional judgments applicable to his conduct. The defendant has not

sustained his burden of establishing his claim of ineffective as-
sistance of counsel.[9]

The order denying the defendant's motion for a new trial is
affirmed.

*So ordered.*

---

[9]Because we hold that counsel was not ineffective, we do not reach the
question whether the defendant was prejudiced. See *Commonwealth* v. *Lavoie*,
464 Mass. at 91 n.13. We therefore need not reach the defendant's argument
that prejudice is to be presumed under *Owens* v. *United States*, 483 F.3d at 66.