981 P.2d 1127

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Michael Wayne ORTIZ, Defendant–Appellant**

**No. 21971.**

Supreme Court of Hawai'i.

Aug. 16, 1999.

As Amended Aug. 27, 1999.

As Amended on Grant of Reconsideration Sept. 17, 1999.

David Kuwahara, on the briefs, Hilo, for the defendant-appellant Michael Wayne Ortiz.

Diane A. Noda, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Michael Wayne Ortiz appeals from the judgment of the third circuit court, filed on August 28, 1998, convicting him of one count of theft in the second degree, in violation of HRS § 708–831(1)(b) (1993).[1] Ortiz asserts the following

---

1. HRS § 708–831(1)(b) provides in relevant part: "**Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft: ... (b) Of property or services the value of which exceeds $300[.]" HRS 708–830 (1993) provides in relevant part:

points of alleged error: (1) the circuit court judge should have recused herself for reasons of personal prejudice against the defendant; (2) Ortiz's right to a timely trial, as mandated by Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (1996),[2] was violated; (3) the circuit court admitted evidence at trial related to burglaries of which Ortiz had previously been acquitted; (4) the circuit court excluded members of Ortiz's family from the courtroom; (5) the circuit court improperly admitted a witness' taped and written statements at trial; and (6) the circuit court failed to give certain of Ortiz's proposed jury instructions. We agree with Ortiz's points of error (4) and (5). Accordingly, we vacate the circuit court's judgment and remand for a new trial. Although our holdings with respect to the foregoing two points are outcome-dispositive of the present appeal, we address Ortiz's remaining arguments in order to provide guidance to the parties and the circuit court on remand. *Cf. State v. Davia*, 87 Hawai'i 249, 252, 953 P.2d 1347, 1352 (1998).

## I. BACKGROUND

### A. The Facts As Adduced At Trial

On the afternoon of July 3, 1996, the homes of Arlene Awa Masulit and Jeffrey Johnson—both residents of Hawaiian Paradise Park, in the Puna District of the Island of Hawai'i—were burglarized. Electronic equipment was taken from the two homes (including a television, a stereo, and two videocassette recorders (VCRs)), as well as compact discs, a vacuum cleaner, jewelry, power tools, a bag of homemade cookies, and other items. John Rodrigues, an acquaintance of Ortiz, observed Ortiz's blue Honda drive up to and park in front of Masulit's house. Rodrigues drove past Masulit's house, and saw Ortiz and another person hiding near the Honda. Rodrigues asked one of the neighbors to call the police. While Rodrigues was waiting for the police to arrive, he observed Ortiz drive away with another male, who was wearing a red hat.

Also on July 3, 1996, Hawai'i Police Department (HPD) Officer James Kelly was patrolling the Paradise Park subdivision. Soon after Ortiz drove away, Rodrigues observed Officer Kelly and reported what he had seen to the officer. Meanwhile, HPD Officer Brian Miller was patrolling the nearby 'Āinaloa subdivision. Apparently acting under instructions from the police dispatcher, Officer Miller stopped Ortiz's blue Honda. Ortiz and a male passenger, wearing a baseball cap, were in the car. Officer Miller instructed Ortiz to back his car up, but Ortiz instead swerved around Officer Miller's vehicle and drove away. Officer Miller gave chase and advised other police units that Ortiz was "running," but Ortiz eluded him.

Later that afternoon, Lydia Worswick, a resident of the 'Āinaloa subdivision, heard loud "banging" noises and observed large objects flying into the bushes outside of her house. When she went to investigate, she observed a blue Honda parked in her driveway. She also observed two young men in the car, whom she later identified as Ortiz and Albert Jardine. When she asked them what they were doing, Ortiz responded that he thought he was at his friend's house. As Ortiz reversed his car out of the driveway, Worswick memorized the Honda's license plate number. Worswick contacted the police and then returned to her yard. She found a number of items, including a television, VCRs, audio equipment, and jewelry, all of which was later identified as the property of Masulit and Johnson.

HPD Officer Gabriel Malani observed Ortiz's car pull out of Worswick's driveway. Jardine was standing on the shoulder of the road. Officer Malani shouted at Ortiz to stop and get out of the car, but Ortiz drove around Officer Malani and raced off. Officer Malani and an officer driving another police car chased Ortiz to Ortiz's home. There,

---

"**Theft.** A person commits theft if the person ... obtains, or exerts control over, the property of another with intent to deprive the other of the property."

**2.** HRPP Rule 48(b)(3) provides in relevant part that "the court shall, on motion of the defendant, dismiss the charge ... if trial is not commenced within 6 months from ... the date of mistrial, order granting a new trial[,] or remand, in cases where such events require a new trial."

they were joined by Officer Miller, who arrested Ortiz.

Jardine surrendered himself to the police soon after Ortiz was arrested. Jardine was a relative of Ortiz and had been staying with Ortiz at the time of the events in question. When he turned himself in, Jardine stated to several officers that he had participated in burglaries with Ortiz. At trial, however, Jardine recanted and testified that he had committed the burglaries alone, without Ortiz.

B. *Procedural History*

On July 10, 1996, Ortiz was charged by amended complaint with two counts of burglary in the first degree, in violation of HRS §§ 707–810(1)(c) (1993),[3] as an accomplice;[4] and one count of theft in the second degree, in violation of HRS § 708–831(1)(b), *see supra* note 1, as an accomplice, *see supra* note 4. With respect to the theft count, the complaint charged Ortiz with having obtained or exerted control over "possessions belonging to ARLENE AWA–MASULIT and/or JEFF JOHNSON, having a value which exceeded $300.00, with intent to deprive ARLENE AWA–MASULIT and/or JEFF JOHNSON of the property[.]" (Capitalization in original.)

Following a trial conducted in November 1996, a jury acquitted Ortiz of both counts of burglary, but found him guilty of theft in the second degree.[5] On appeal, in a memorandum opinion filed on January 26, 1998, this court vacated Ortiz's conviction on the ground that Ortiz had been denied the effective assistance of counsel at trial. This court's notice and judgment on appeal, vacating Ortiz's conviction and remanding the matter for a new trial, was filed on March 4, 1998.

On March 4, 1998, Ortiz filed a "Motion To Disqualify Judge." In the memorandum in support of his motion, Ortiz argued that he "believe[d] that Judge [Riki May] Amano [was] biased and prejudiced against him[,] based on his observations of the Court during the previous trial and other proceedings in this case." Ortiz's motion was heard by Judge Greg Nakamura on April 15, 1998. On May 6, 1998, the circuit court entered an order denying Ortiz's motion.

On July 10, 1998, Ortiz filed a motion in limine to exclude, *inter alia,* evidence of his "alleged participation in the burglaries for which he was acquitted at his first trial[.]" The circuit court denied Ortiz's motion on July 31, 1998, noting that:

1. The legal principles of res judicata and double jeopardy are not supported by the facts as established in the record of this case; and

2. The State is not precluded from proving state of mind by the circumstantial evidence of Defendant's conduct and reasonable inferences arising from the circumstances surrounding his acts[.][ [6]]

On the opening day of Ortiz's new trial, August 12, 1998, the following colloquy took place out of the presence of the jury:

[Deputy Prosecuting Attorney (DPA)]: I just wanted to inform the Court we are investigating at this time a possible ... complaint against one of the defendant's family members who also is a witness in

---

**3.** HRS § 707–810 provides in relevant part:
 **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
 ...
 (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

**4.** HRS § 702–222 (1993) provides in relevant part:
 **Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:

(1) With the intention of promoting or facilitating the commission of the offense, the person:
 (a) *Solicits the other person to commit it;* or
 (b) Aids or agrees or attempts to aid the other person in planning or committing it....

**5.** Ortiz was also acquitted of the lesser included offenses of burglary in the second degree and criminal trespass in the first degree.

**6.** Ortiz made a similar motion in limine orally on August 11, 1998, with respect to any evidence of trespass. The circuit court denied this motion as well.

this case of perhaps an intimidation against one of the State's witnesses. I don't wish really to go into details. I am just forewarning the court. . . .

. . . .

THE COURT: Okay. I don't know anything about the investigation. All I know is what's placed on the record right now.

[DPA]: Right.

THE COURT: And I have to leave it to the State to evaluate the necessity of revealing that information, especially as it pertains to the trial.

. . . .

[Ortiz's Counsel]: Your Honor, I think we—defense should be disclosed at least . . . names.

. . . .

[DPA]: State—State ask[s] that remain confidential, your Honor, on behalf of that particular witness because they're w[a]ry of further retaliation if the name's revealed at this time, and that's the State's concern.

THE COURT: Not knowing anything more than what is placed on the record, and I think at this time the Court will leave it to the prosecutor to disclose the information when and if appropriate.

Subsequently, out of the hearing of Ortiz's counsel, the DPA disclosed to the circuit court that Rodrigues, a witness for the prosecution, had reported that Ortiz's sister, Tammy Wong, had been directing threats at him. Nevertheless, Rodrigues testified without incident on August 12, 1998.

On August 17, 1998, the prosecution made an oral motion "to prohibit [Ortiz's] family from being in the State Building," which contained the courtroom in which Ortiz's trial was being conducted.[7] The prosecution did not expressly state the basis for the motion, but it appeared to base the motion on an ongoing investigation, involving at least some of Ortiz's family members, into "[j]ury tampering, witness tampering, intimidating a

witness, [and] possibl[e] retaliation against a witness."[8] Over Ortiz's objection and without any comment, the circuit court granted the prosecution's motion to prohibit Ortiz's family from being present in the State Building. The circuit court then ordered Ortiz's mother and girlfriend to leave the State Building, adding that, "[i]f any other members of the family are present, they will be advised of the same thing. If you see someone present, you should—rather[,] if you see someone, you should advise them of the same thing." Later that day, Ortiz sought by motion to have the circuit court withdraw its oral order excluding his family.

Following its exclusion of Ortiz's family members from the courtroom, the circuit court undertook an individual voir dire of the jury panel. The prosecution queried the jurors, *inter alia*, as to whether they had been contacted by anyone about the case, whether they knew any of the witnesses, and whether they had read or talked with anyone about the case outside the courtroom. The circuit court admonished each juror not to speak to anyone about the case until the commencement of deliberations. Following voir dire, the circuit court replaced one juror and also denied the prosecution's motions for a mistrial and to sequester the jury, *see supra* note 7, finding that it was "still possible to achieve a fair trial."

On the afternoon of August 17, 1998, after excusing the jury for the day, the circuit court heard the testimony of Phillip Nash, Ortiz's cellmate. Nash testified that he had made a formal statement to an investigator for the prosecution, in which Nash had reported that Ortiz had told him (1) that Wong, Wong's husband, and Ortiz's mother knew "a couple of guys on the jury" and that "everything [was] going to be okay" and (2) that Ortiz's family members had threatened Rodrigues. The defense then elicited testimony from Nash that Nash "definitely" wanted to

___

7. The prosecution also moved orally for a mistrial or for immediate jury sequestration.

8. In support of this allegation—which was advanced in support of the prosecution's motion for a mistrial and not expressly in connection with its motion to bar Ortiz's family from the State

Building—the prosecution cited (1) the prosecution's investigation of threats allegedly made by Wong toward Rodrigues and (2) allegations by Phillip Nash, Ortiz's cellmate, that Ortiz, Wong, Wong's husband, and Ortiz's mother were engaged in jury tampering.

get out of prison and that, when Nash had made his statements to the investigator, he had asked that the charges against him be cleared.

On August 18, 1998, at the circuit court's request, Ortiz filed a memorandum noting that, pursuant to *Territory v. Scharsch*, 25 Haw. 429, 436 (1920), the violation of the constitutional right of an accused to a public trial necessarily implied prejudice. On the same day, the circuit court responded orally to Ortiz's pending motion as follows:

> The Court in this case ... has ... prohibited from the State Building individuals who I believe are under investigation by the State. And I don't know which people are being considered being investigated. I don't know. They're members of the defendant's family, that's all I know. I don't know if it's mom, girlfriend, the sister, [or his] brother-in-law. All these people have been mentioned, but I don't know specifically who and I don't know what—specifically what charges.
>
> There is an exhibit already received by the Court which ... sets out certain factual assertions that may give rise to some criminal charges.... [S]o that's one thing.
>
> And [the] second thing is, as far as prohibiting these individuals from the courtroom, I think *State v. Hashimoto*, [47 Haw. 185, 389 P.2d 146 (1963),] while not exactly on point, I think that it does set out the ... components of the presiding judge to insure that ... every trial in every court proceeding[ ] is conducted orderly, fairly, and impartially. And for those reasons[,] I have asked or ordered the family of Mr. Ortiz to be out of the State Building until such time as they are called to testify.
>
> So I don't know ... that there is any case law that I have read offered by counsels, and on both sides, that would warrant reconsideration of that issue and I will stand by my order. And to the degree that there is an oral motion, I deny the same.

In the course of his testimony, Jardine admitted to having made a series of prior oral inconsistent statements to HPD Detective Rodney Aurello on the day after Jardine's arrest. The prosecution then moved into evidence a previously redacted transcript of an interview conducted by Detective Aurello of Jardine on July 4, 1996 [hereinafter, "the transcribed interview"]. The circuit court received the transcribed interview into evidence over Ortiz's objection that insufficient foundation had been laid for the admission of the document in its entirety. The prosecution also moved into evidence two versions of a tape recording [hereinafter, "the tapes"]—one containing redactions and one not—of an interview conducted by Detective Aurello of Jardine on the previous day—July 3, 1996. The circuit court likewise received the tapes into evidence over Ortiz's objection. However, the circuit court "published" only the redacted tape to the jury, declining to allow the jurors access to the unredacted version.

At the conclusion of the evidentiary phase of the trial, the circuit court refused Ortiz's Proposed Jury Instructions Nos. 2 through 5, which read as follows:

> No. 2 All jurors must agree that the same act of theft was proven beyond a reasonable doubt before you may find the defendant guilty.
>
> No. 3 You must accept, as conclusively proved, that [Ortiz] did not commit the burglaries of the residences of Arlene Masulit and Jeff Johnson and July 3, 1996, that is, that he did not intentionally enter or remain unlawfully in the dwelling of another, with the intent to comment therein a theft.
>
> No. 4 You must accept, as conclusively proved, that [Ortiz] did not commit a trespass in the first degree at the residences of Arlene Masulit and Jeff Johnson on July 3, 1996, that is, that he did not intentionally enter or remain lawfully in the dwelling of another.
>
> No. 5 You must accept, as conclusively proved, that [Ortiz] did not commit a simple trespass at the residences of Arlene Masulit and Jeff Johnson on July 3, 1996, that is, that he did not knowingly enter or remain unlawfully in or upon [the] premises.

In its summation, the prosecution argued in relevant part as follows:

There's not really a dispute that the value of all the things is over $300 from both Arlene Awa Masulit's home and Jeff Johnson. Arlene Awa Masulit told you that based on her experience, the estimated fair market value of the things stolen from their household was more than $300.

There was no testimony as far as the fair market value of the items from Jeff Johnson's house. . . .

But together, both Arlene Awa Masulit's things and Jeff Johnson's things together, the State needs to just prove that together it was more than $300[,] or the State could also prove Arlene Awa Masulit's things alone were more than $300.

The circuit court charged the jury that its verdict must be unanimous. The circuit court also provided the jury with a special verdict form, which contained the following questions:

1) How did you reach your decision on value? Please circle only one of the following.

 a) Arlene Awa–Masulit's property was over $300.00; or

 b) Jeff Johnson's property was over $300.00; or

 c) Arlene Awa–Masulit and Jeff Johnson's properties were over $300.00; or

 d) None of the above.

2) Is the answer to # 1 above unanimous?
 Yes No
 (circle one)

The jury circled (c) in answer to the first question and "yes" in response to the second.

On August 26, 1998, the jury found Ortiz guilty of theft in the second degree. On August 28, 1996, the circuit court entered its judgment, guilty conviction, and sentence, convicting Ortiz of theft in the second degree and sentencing him to an extended indeterminate ten-year prison term, pursuant to HRS §§ 706–661(3) (1993) and 706–662(1) (1993), a mandatory minimum sentence of three years and four months, pursuant to HRS § 706–606.5(1)(b)(iv) (1993), and payment of restitution, pursuant to HRS § 706–

605(1)(d) (1993 & Supp.1995). On September 30, 1998, the circuit court entered an order denying Ortiz's motion for a new trial. Ortiz filed a timely notice of appeal on October 13, 1998.

## II. STANDARDS OF REVIEW

### A. Judge's Denial Of A Motion For Disqualification

■ This court has "adopt[ed] the abuse of discretion standard for reviewing a judge's denial of a motion for recusal or disqualification." State v. Ross, 89 Hawai'i 371, 376, 974 P.2d 11, 16 (1998).

### B. Constitutional Law

■ . . . We answer questions of constitutional law "by exercising our own independent judgment based on the facts of the case." State v. Trainor, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996) (citations and internal quotation marks omitted); State v. Lee, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996) (citation, internal quotation marks, and brackets omitted). Thus, we review questions of constitutional law under the "right/wrong" standard. See State v. Toyomura, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995) (citing State v. Higa, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995), and State v. Gaylord, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)); State v. Baranco, 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994) (issue whether defendant's constitutional right against double jeopardy would be violated unless indictment dismissed is question of law, reviewed under right/wrong standard); In re [John] Doe, Born on January 5, 1976, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (whether speech is protected by first amendment to United States Constitution is applied . to states through fourteenth amendment and by article I, section 4 of Hawai'i Constitution are questions freely reviewable on appeal).

State v. Quitog, 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997) (quoting State v. Arceo, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996)).

C. *Findings Of Fact And Conclusions Of Law*

■■■ Findings of fact will not be disturbed unless clearly erroneous. *See Furukawa v. Honolulu Zoological Society,* 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied,* 85 Hawai'i 196, 940 P.2d 403 (1997) (citation omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *State v. Kane,* 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998); *see also Britt v. United States Auto. Ass'n,* 86 Hawai'i 511, 516, 950 P.2d 695, 700 (1998).

*Kim v. Contractors License Bd.,* 88 Hawai'i 264, 269, 965 P.2d 806, 811 (1998).

We review the trial court's [conclusions of law] *de novo* under the right/wrong standard. *Raines v. State,* 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). "Under this … standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). Thus, a [conclusion of law] "is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted).

*State v. Medeiros,* 89 Hawai'i 361, 364, 973 P.2d 736, 739 (1999) (quoting *Kane,* 87 Hawai'i at 74, 951 P.2d at 937 (quoting *Aickin v. Ocean View Inv. Co.,* 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997))) (ellipsis points in original).

D. *Admissibility of Evidence*

■■■ "We apply two different standards of review in addressing evidentiary issues." *State v. Richie,* 88 Hawai'i 19, 36, 960 P.2d 1227, 1244 (1998). "Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." *State v. Loa,* 83 Hawai'i 335, 349, 926 P.2d 1258, 1271, *reconsideration denied,* 83 Hawai'i 545, 928 P.2d 39 (1996) (citing *Kealoha v. County of Hawai'i,* 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993)).

■■■ This jurisdiction has not directly addressed the appropriate standard of review for evidentiary rulings made under Hawai'i Rules of Evidence (HRE) Rule 613(b) (1993).[9] However, inasmuch as application of HRE Rule 613(b) "admits of only one correct result," *see Loa, supra,* the right/wrong standard must be applied. We also apply the right/wrong standard to questions of hearsay:

[t]he requirements of the rules dealing with hearsay are such that application of the particular rules can yield only one correct result. HRE Rule 802 (1993)[[10]] provides in pertinent part that "[h]earsay is not admissible except as provided by these rules[.]" HRE Rules 803 and 804(b) (1993) enumerate exceptions that "are not excluded by the hearsay rule[.]" With respect to the exceptions, the only question for the trial court is "whether the specific requirements of the rule were met, [so] there can be no discretion." *Kealoha [v. County of Hawaii,* 74 Haw. 308,] 319, 844 P.2d [670,] 675[, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993)]. Thus, where the admissibility of evidence is determined by application of the hearsay rule, there can [generally] be only one correct result, and "the appropriate stan-

---

9. HRE Rule 613 provides in relevant part:
 (b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the wit-

ness, and (2) the witness has been asked whether the witness made the statement.

10. HRE Rule 802 provides: "**Hearsay Rule.** Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute."

dard for appellate review is the right/wrong standard." *Id.*

*State v. Christian,* 88 Hawai'i 407, 418, 967 P.2d 239, 250 (1998) (quoting *State v. Moore,* 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996)) (some brackets added and some in original).

E. *Jury Instructions*

 " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03, 111 S.Ct. 1884, 114 L.Ed.2d 432 ... (1991)[.]

*[State v.] Arceo,* 84 Hawai'i 1,] 11–12, 928 P.2d [843,] 853–54 [ (1996) ] (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cabrera,* 90 Hawai'i 359, 365, 978 P.2d 797, 803 (1999) (quoting *State v. Maumalanga,* 90 Hawai'i 58, 62–63, 976 P.2d 372, 376–77 (1998) (quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997))).

## III. DISCUSSION

A. *The Manner Of The Circuit Court's Exclusion Of Ortiz's Family Members From The Courtroom Violated Ortiz's Right To A Public Trial.*

 Ortiz argues that "reversible error was committed by the court's prohibition of members of the public from attending the trial." We agree. This jurisdiction has addressed a defendant's right to a public trial as follows:

> The Sixth Amendment provides that in all criminal prosecutions, the defendants shall have the right to a speedy and public trial. Article I, Section [14], of the Hawaii Constitution, which was modeled after the Sixth Amendment to the United States Constitution, *State v. Wong,* 47 Haw. 361, 389 P.2d 439 (1964), contains a similar mandate. "The purpose of the requirement of a public trial was to guarantee that the accused would fairly be dealt with and not unjustly condemned." *Estes v. Texas,* 381 U.S. 532, 538–539, 85 S.Ct. 1628, 14 L.Ed.2d 543 ... (1965). But so deeply ingrained has been our traditional mistrust for secret trials, *see In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 ... (1948), that the general policy of open trials has become firmly embedded in our system of jurisprudence.

*Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 228, 580 P.2d 49, 53–54 (1978). Moreover, the United States Supreme Court has observed that, "without exception[,] all courts have held that an accused is[,] at the very least[,] entitled to have his friends, *relatives* and counsel present, no matter with what offense he may be charged." *In re Oliver,* 333 U.S. at 271–72, 68 S.Ct. 499 (emphasis added).

Nevertheless, the right to a public trial is not absolute.

> "The presumption of openness may be overcome only by an overriding interest based on *findings* that closure is essential to preserve higher values and is *narrowly tailored* to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

*Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (quoting *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)) (emphases added). Specifically, the *Waller* court articulated a four-part test that must be applied in order to determine whether a courtroom may be closed over a defendant's objection:

> [ (1) ] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [ (2) ] the closure must be no broader than necessary to protect that interest, [ (3) ] the trial court must consider reasonable alternatives to closing the proceeding, and [ (4) ] it must make findings adequate to support the closure.

467 U.S. at 48, 104 S.Ct. 2210. In *Waller,* upon the prosecution's motion and over the defendant's objection, the trial court closed a suppression hearing to all persons other than witnesses, court personnel, the parties, and their attorneys. *Id.* at 41–42, 104 S.Ct. 2210. The United States Supreme Court, applying the foregoing test, held that the trial court's closure of the courtroom had violated the defendant's right to a public trial. *Id.* at 48, 104 S.Ct. 2210.

Although *Waller* addressed the *complete* closure of a trial to the public, federal and state courts have subsequently extended the *Waller* analysis to *partial* closures of trials, *i.e.,* both closure of a segment of the trial during which the testimony of one or more witnesses is elicited and closure limited to particular members of the public.[11] *See English v. Artuz,* 164 F.3d 105 (2d Cir.1998) (courtroom closed to the public during the testimony of one witness); *United States v. Blanche,* 149 F.3d 763 (8th Cir.1998) (defendant's family excluded from courtroom after defense rested); *United States v. Sherlock,* 962 F.2d 1349 (9th Cir.1989) (defendants' families excluded during one witness' testimony), *cert. denied,* 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *United States ex rel. Morgan v. Lane,* 705 F.Supp. 410 (N.D.Ill.1989) (courtroom closed to the public during the testimony of one or two witnesses), *aff'd,* 897 F.2d 531 (7th Cir.1990); *Renkel v. State,* 807 P.2d 1087 (Alaska App. 1991) (courtroom closed to the public during testimony of minor victims); *People v. Webb,* 267 Ill.App.3d 954, 205 Ill.Dec. 6, 642 N.E.2d 871 (1994) (defendant's grandmother excluded from courtroom for part of venire proceedings), *appeal denied,* 159 Ill.2d 578, 207 Ill.Dec. 523, 647 N.E.2d 1016 (1995); *State v. Schultzen,* 522 N.W.2d 833 (Iowa 1994) (defendant's family placed behind a screen during the testimony of one witness); *Watters v. State,* 328 Md. 38, 612 A.2d 1288 (1992) (defendant's mother and sister prevented from entering courtroom during one morning of trial), *cert. denied,* 507 U.S. 1024, 113 S.Ct. 1832, 123 L.Ed.2d 460 (1993); *Commonwealth v. Martin,* 39 Mass.App.Ct. 44, 653 N.E.2d 603 (general public excluded from courtroom during voir dire hearing and reopened after the testimony of one witness), *review denied,* 421 Mass. 1102, 654 N.E.2d 1202 (1995); *People v. Nieves,* 90 N.Y.2d 426, 660 N.Y.S.2d 858, 683 N.E.2d 764 (1997) (defendant's wife and children excluded during the testimony of one witness); *Commonwealth v. Penn,* 386 Pa.Super. 133, 562 A.2d 833 (1989) (courtroom closed to the public during testimony of one witness), *cert. denied,* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 43 (1991).

---

**11.** We note that many courts have placed a gloss on the *Waller* analysis in cases involving partial closure, holding that a "substantial" interest, rather than a "compelling" interest, is all that is constitutionally required to satisfy the first prong of the *Waller* test. *See, e.g., United States v. Farmer,* 32 F.3d 369, 371 (8th Cir.1994); *United States v. Galloway,* 937 F.2d 542, 546 (10th Cir. 1991); *United States v. Sherlock,* 962 F.2d 1349, 1357 (9th Cir.1989); *Douglas v. Wainwright,* 739 F.2d 531, 533 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *People v. Kline,* 197 Mich.App. 165, 494 N.W.2d 756, 759 (1992).

In the instant case, the manner in which the circuit court closed the courtroom to Ortiz's family from August 17, 1998, through the close of his trial on August 26, 1998 failed to satisfy the second, third, and fourth prongs of the *Waller* test. The second prong requires that the closure be "no broader than necessary" to protect the state's alleged interest. The circuit court, however, based its closure order on a vague suspicion of wrongdoing, admitting that it "d[id not] know which people are ... being investigated." The prosecution had reported allegations to the court that had been raised against Ortiz's sister, mother, and brother-in-law. The circuit court, nevertheless, closed the courtroom to *all* of Ortiz's family members. In addition, the circuit court expressly ordered Ortiz's girlfriend to leave the courtroom, although the prosecution had never even alleged that she was the subject of any investigation.

Furthermore, the circuit court's exclusion order remained in place even *after* the court had conducted a voir dire of all of the jurors and had satisfied itself that no jury tampering had taken place.[12] Ortiz's family was prevented from entering the courtroom, not merely during the testimony of one or two witnesses, but over the course of at least five days of trial. It is therefore obvious that the circuit court's exclusion order was not "narrowly tailored" to meet the state's purported interest.

Under the third prong of the *Waller* test, the circuit court was required to consider reasonable alternatives to closing the courtroom. No evidence on the record suggests that the circuit court engaged in such consideration. The circuit court did not address Ortiz's suggestion that the court defer its decision to close the courtroom until a witness was produced who could provide evidence substantiating the prosecution's allegations of jury tampering. In this regard, we note that closure of the courtroom to a defendant's family is not the only, nor necessarily the most effective, response to allegations of jury tampering. For example, the trial court might, instead, admonish the defendant and some or all courtroom spectators regarding applicable criminal sanctions. *See, e.g.,* HRS §§ 710–1074 (1993), a class B felony, proscribing "intimidating a juror" and 710–1075 (1993), a class C felony, prohibiting "jury tampering." Closure of a courtroom to *all* of a defendant's family for the entire duration of his or her trial "should remain the last option considered or employed." *Penn,* 562 A.2d at 839.

The fourth prong of the *Waller* test required the circuit court to "make findings adequate to support the closure." We hold that the circuit court's ruling in the present case failed to satisfy this requirement. First, we note that the circuit court entered *no* findings before ordering Ortiz's family from the courtroom on the morning of August 17, 1998. This alone violated the fourth prong of the *Waller* test. Furthermore, on the morning of August 18, 1998, when the circuit court formally addressed its closure decision, the single finding it articulated, which was devoid of any specific facts, was that "there is an exhibit already received by the Court which ... sets out certain factual assertions that may give rise to some criminal charges."[13] "Broad and general findings are insufficient" to satisfy the fourth prong of the *Waller* test. *English,* 164 F.3d at 109; *see also Waller,* 467 U.S. at 48, 104 S.Ct. 2210 (trial court's findings held to be inadequate, inasmuch as they were "broad and general, and did not purport to justify closure of the entire hear-

---

12. The prosecution's allegations of "witness tampering, intimidating a witness, [and] possibl[e] retaliation against a witness" should have had no bearing on the circuit court's exclusion of Ortiz's family from the courtroom in the first place. The prosecution raised these concerns only with respect to Rodrigues, a witness who had testified several days *before* the prosecution moved to exclude Ortiz's family. Accordingly, the prosecution's fear of witness tampering or intimidation was no longer germane at the time the circuit court ordered Ortiz's family excluded from the courtroom. *Cf. Penn,* 562 A.2d at 838 (noting that "a bald assertion of alleged [potential witness] intimidation does not justify the kind of encroachment on a defendant's Sixth Amendment right to a public trial which clearing the courtroom for a witness' testimony entails").

13. The circuit court's only other potentially relevant statement—"[a]ll these people have been mentioned, but I don't know specifically who and I don't know ... specifically what charges"—is too vague to be considered a finding.

ing"). The circuit court's finding in the present matter was simply too "broad and general" to justify the complete closure of the courtroom to Ortiz's family members.

We are well aware of the prosecution's interest, which we share, in maintaining the integrity of the criminal justice system. We recognize that trial court judges have "the authority to clear the courtroom of persons customarily excluded or of persons whose conduct or presence in the courtrooms is such that the orderly, fair, and impartial functioning of the courts is affected." *State v. Hashimoto*, 47 Haw. 185, 200, 389 P.2d 146, 155 (1963). Our determination that the manner in which the circuit court closed the courtroom to Ortiz's family in this case was improper is in no way intended to minimize the importance of the state's interests or to suggest that a partial closure with respect to some or all members of the public would not be justified in some cases. On the record before us, however, we hold that Ortiz's right to a public trial was violated.

■ We emphasize that the doctrine of harmless error has been held to be inapplicable under the circumstances before us. *See English*, 164 F.3d at 108; *Watters*, 612 A.2d at 1293. The United States Supreme Court has noted that a "defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." *Waller*, 467 U.S. at 49, 104 S.Ct. 2210. Indeed, the denial of a public trial is considered a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*,

499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). As such, any case in which a defendant is denied the right to a public trial is subject to "automatic reversal." *See Neder v. United States*, — U.S. —, —–——, 119 S.Ct. 1827, 144 L.Ed.2d 35, 67 U.S.L.W. 4404, 4405-06 (1999) (citing *Waller*); *cf. Territory v. Scharsch*, 25 Haw. 429, 433-37 (1920) (new trial granted where all members of the public excluded from the defendant's trial, because "[t]he order of the court ... deprived the accused of a right guaranteed to him by the Federal Constitution[,] and the exception thereto must be sustained"). Accordingly, Ortiz's conviction must be vacated and the matter remanded for a new trial.

B. *The Circuit Court Erred In Admitting The Entirety of Jardine's Transcribed And Taped Interviews Into Evidence.*

Ortiz argues that the circuit court erred in admitting both Jardine's transcribed interview in its entirety and the tapes containing Jardine's statements to Detective Aurello. Specifically, Ortiz contends that Jardine's transcribed interview and the taped statements were admitted in their entirety in violation of Hawai'i Rules of Evidence (HRE) Rule 613(b) (1993), *see supra* note 9, and 802.1(1) (1993).[14] We agree.

1. *The transcribed interview*

■ The circuit court permitted the prosecution to introduce Jardine's transcribed interview into evidence on the ground that the document, in its entirety, constituted a witness' "statement" for purposes of HRE Rule 613(b). We note, however, that the information contained in Jardine's transcribed interview went beyond the scope of the questions

---

**14.** HRE Rule 802.1 provides in relevant part:
 **Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
 (1) Inconsistent statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:

 (A) Given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; or
 (B) Reduced to writing and signed or otherwise adopted or approved by the declarant; or
 (C) Recorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement[.]

posed to Jardine regarding the exhibit. We agree with Professor Bowman that, "[w]ere the price of cross-examination concerning prior inconsistent statements to be the contemporaneous admission of the *entire* ... written statements, [HRE R]ule 613(b) would in effect be largely nullified." Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 106–2 at 43 (2d ed. 1998) (emphasis added); cf. *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469, 484–85 (1998) (holding that the trial court correctly refused to admit entirety of a videotape—and instead instructed counsel to play only those portions of the videotape that were relevant to specific questions he had asked the witness on cross-examination—because, *inter alia*, the entire videotape was not an inconsistent statement).

With respect to "prior inconsistencies" contained in Jardine's transcribed interview, the prosecution questioned Jardine at trial regarding the following: whether Jardine left Ortiz's house with Ortiz on July 3, 1996; whether Ortiz's young son was in the car; whether Ortiz drove the car; where Ortiz parked the car; whether Ortiz was with Jardine when they left various house; whether Ortiz's girlfriend had warned Ortiz and Jardine that the police were looking for two men; whether Ortiz and Michael dumped "things" in Worswick's bushes; and whether Jardine had lied to Detective Aurello. The prosecution did *not* question Jardine, however, as to what Ortiz carried out of Masulit's and Johnson's houses, who first entered Johnson's house, or what Ortiz did when he saw the police—information that was contained in Jardine's transcribed interview and

that constituted significant elements of his "statement." *See* HRE Rule 613. Accordingly, we cannot agree with the circuit court's conclusion that Jardine's transcribed interview was properly admitted as a single "statement" for purposes of HRE Rule 613(b),[15] and we hold that the circuit court erred in admitting the transcribed interview in its entirety.

### 2. The tapes

█ As was the case with respect to Jardine's transcribed interview, the circuit court admitted the tape recordings of Jardine's July 3, 1996 interview with Detective Aurello, pursuant to HRE Rule 613(b), on the ground that it constituted a "statement." However, the record reflects that the prosecution did not actually use the tapes to *impeach* Jardine. The tapes would only have been admissible pursuant to HRE Rule 613 if they were evidence of a "prior *inconsistent* statement." The prosecution did not offer the contents of the tapes, however, as "inconsistencies." In fact, the prosecution asked Jardine only *one* question regarding the contents of the tapes: "But didn't you tell Officer Aurello when he interviewed you that night and taped you with his cassette tape that you had been staying with Michael Ortiz for about a month?" Jardine's full recounting of the alleged theft as recorded on the tapes—from Ortiz's driving of the car to Ortiz's walking out of Masulit's and Johnson's houses with their property—could not properly be bootstrapped into evidence pursuant to HRE Rule 613 by way of a single question.

---

**15.** We note that a trial court may, under proper circumstances, admit a prior written or recorded statement in full pursuant to HRE Rule 613, *see*, *e.g.*, *State v. Clark*, 83 Hawai'i 289, 295, 926 P.2d 194, 200 (entire taped interview of a witness with a police detective admitted where witness testified that her entire statement to the police was a "total lie"), *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996); *State v. Eastman*, 81 Hawai'i 131, 134, 913 P.2d 57, 60 (1996) (entire written form admitted where witness testified that her statements in the form were "not true"). Where the information in the written or recorded statement goes beyond the scope of direct or cross-examination, however, that information

must be redacted before the rest of the written statement may be admitted.

We observe that the transcribed interview would have been admissible as substantive evidence, pursuant to HRE Rule 802.1(1), if (1) Jardine had disclaimed the contents of the entire transcribed interview, (2) the prosecution had questioned Jardine on *each* prior inconsistent statement, or (3) the prosecution had redacted portions of the transcribed interview about which Jardine was not questioned. *See Clark*, 83 Hawai'i at 294–95, 926 P.2d at 199–200 (noting that, if prior inconsistent statements meet the requirements of HRE Rule 802.1(1), they may be admitted as substantive evidence of a defendant's guilt); *Eastman*, 81 Hawai'i at 137–38, 913 P.2d

As above, we note that, where the information in a non-party witness' out-of-court statement goes beyond the scope of direct or cross-examination, that information must be redacted before the rest of the statement may be admitted. Accordingly, we hold that the circuit court erred in admitting the tapes into evidence.

### C. *The Circuit Court Did Not Abuse Its Discretion In Refusing To Disqualify The Judge From Presiding Over Ortiz's Second Trial.*

 Ortiz contends that the trial judge harbored a personal prejudice or bias against him and that she was therefore required to disqualify herself from presiding over his second trial. Ortiz bases his contention on the fact that, during Ortiz's February 4, 1997 sentencing hearing, the judge: (1) said, "As far as I'm concerned, you are a menace to the community that you live in. You're a menace to society[;]" (2) said, "You devoted your life to a pursuit of financial and material gain through crime[;]" and (3) concluded that an extended term of imprisonment was necessary for the protection of the public. We cannot hold that the circuit court judge's statements and ultimate conclusion were in any way improper. On the contrary, inasmuch as the circuit court scrupulously observed the correct procedures in imposing an extended term sentence, the judge was not required to disqualify herself.

 This court has recently reaffirmed that

"[a] judge whose disqualification is sought must take the facts alleged as true, but can pass upon whether they are legally sufficient." *State v. Mata,* 71 Haw. 319, 325, 789 P.2d 1122, 1126 (1990). When the affidavit to disqualify refers to matters of record, however, we may consider the en-

tire record in making our determination. *Schutter* [*v. Soong* ], 76 Hawai'i [187,] 205, 873 P.2d [66,] 84 [ (1994) ] (citing *Peters v. Jamieson,* 48 Haw. 247, 257, 397 P.2d 575, 582 (1964)). "The reasons and facts for the belief the [affiant] entertains ... must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Whittemore v. Farrington,* 41 Haw. 52, 57 (1955) (citation omitted). The test assumes the viewpoint of a reasonable onlooker, rather than the subjective belief of the judge. *See Yorita v. Okumoto,* 3 Haw.App. 148, 153, 643 P.2d 820, 825 (1982).

*Ross,* 89 Hawai'i at 377, 974 P.2d at 17 (some brackets added and some in original).

 The record reflects that the trial judge acted properly in sentencing Ortiz. This court has observed that,

[i]n order to engage in meaningful review of a sentencing court's decision without involving ourselves unduly in the exercise of the court's discretion, we require the sentencing court to *"state on the record its reasons* for determining that commitment of the defendant for an extended term is necessary for protection of the public and ... enter into the record all findings of fact which are necessary to its decision."

*State v. Okumura,* 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995) (citing *State v. Tamura,* 63 Haw. 636, 639, 633 P.2d 1115, 1118 (1981) (quoting *State v. Huelsman,* 60 Haw. 71, 92, 588 P.2d 394, 407 (1978))) (emphasis added). Inasmuch as the trial judge was *required* to state her reasons for imposing an extended term sentence, she was well within her proper bounds in expressing her view that Ortiz was a "menace to society."

Furthermore, a sentencing court must consider a defendant's "history and characteristics," pursuant to HRS § 706–606(1) (1993).[16]

at 63–64 (same); *State v. Thomas,* 84 Hawai'i 253, 261–62, 933 P.2d 90, 98–99 (App.1997) (noting that, although "[a]uthorities have questioned the use of prior inconsistent statements as the sole basis to support a conviction, ... HRE Rule 802.1(1) expressly permits substantive use of a

prior written statement signed by a witness who gives trial testimony inconsistent with that statement").

**16.** HRS § 706–606 provides in relevant part that "[t]he court, in determining the particular sen-

The circuit court was entitled, therefore, to rely and comment on Ortiz's history of "financial and material gain through crime" "for the limited purpose of ascertaining [Ortiz's] propensity for acting in a manner that endangered the public 'in determining the particular [enhanced] sentence to be imposed.'" *State v. Carvalho*, 90 Hawai'i 280, 287, 978 P.2d 718, 726 (1999) (noting that the circuit court was entitled to consider a defendant's history of setting fires and engaging in cruelty to animals) (citing *State v. Loa*, 83 Hawai'i 335, 355, 926 P.2d 1258, 1278 (determining that the circuit court had not erred in considering police reports and testimonial evidence in imposing extended term sentence), *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996) (citation omitted)) (some brackets added and some in original)). Inasmuch as the circuit court judge commented on Ortiz's history of crime in furtherance of the requirements of HRS § 706–606, such commentary, without more, cannot be construed as an expression of the judge's bias or prejudice.

■ Finally, it is absurd to suggest that the circuit court's imposition of an extended term sentence amounted to a demonstration of personal bias or prejudice. "[A]dverse rulings, even if erroneous, do not establish bias." *Ross*, 89 Hawai'i at 379, 974 P.2d at 19 (citing *Peters*, 48 Haw. at 257, 397 P.2d at 583). Considering the trial judge's explanation of Ortiz's sentence as a whole, the imposition of an extended term sentence did not demonstrate bias on her part.[17]

Ortiz further argues, relying on *Schutter, supra*, and *State v. Chow*, 77 Hawai'i 241, 883 P.2d 663 (App.1994), that, "where a judge has already determined a defendant's sentence, resentencing on remand from the appellate courts has been ordered before a different judge." Ortiz's reliance on these decisions is misplaced. In both *Schutter* and *Chow*, the

appellate court remanded to a different judge for the purpose of resentencing because the defendant had been denied his right of presentence allocution. We agree with the observation of the United States Court of Appeals for the Ninth Circuit that

[a] resentencing necessitated by the [trial] judge's failure to afford the right of allocution to [a] defendant involves the problem whether upon remand the judge could reasonably be expected to erase earlier expressed views or findings from his mind or may overreact in an effort to be impartial. It is well recognized that "(i)t is difficult for a judge, having once made up his mind, to resentence a defendant ...". *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir.1972). See *United States v. Rosner*, 485 F.2d 1213, 1231 (2d Cir.1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 ... (1974). On remand, in exercising his right to allocution[, the] defendant has the right to present fully all available accurate information bearing on mitigation of punishment, and the [trial] court has a duty to listen and give careful and serious consideration to such information. See *United States v. Stein*, 544 F.2d 96 (2d Cir.1976). If the information submitted involves new factual matter, the fact that the [trial] judge has previously formed and expressed a judgment of defendant may make it difficult for him to consider the new matter unhampered by his prior conclusions. A different [trial] judge would not encounter such difficulty.

*United States v. Navarro–Flores*, 628 F.2d 1178, 1184 (9th Cir.1980).

Absent "unusual circumstances"—such as those presented by a judge's failure to grant a defendant his or her presentence right of allocution—or "personal bias," remand to a different trial judge is uncalled for. *See, e.g., United States v. Hanna*, 49 F.3d 572, 578 (9th Cir.1995). As discussed above, Ortiz has

---

tence to be imposed, shall consider: (1) The nature and circumstances of the offense and the history and characteristics of the defendant...."

17. Ortiz suggests that his case is analogous to *State v. Silva*, 78 Hawai'i 115, 890 P.2d 702 (App.1995), in which the Intermediate Court of Appeals set aside a defendant's judgment of conviction because the circuit court judge was not

impartial. Ortiz's comparison to *Silva* is untenable. *Silva* held "that when the court assumes the role of a prosecutor, it violates the fundamental due process requirement that the tribunal be impartial, and such an error, by definition, is inherently prejudicial and not harmless." 78 Hawai'i at 121, 890 P.2d at 708. In the present matter, the trial judge played no such inappropriately active role.

not demonstrated any personal bias on the part of the trial judge. Furthermore, he has not established any "unusual circumstances" that would warrant the case being remanded to another judge. We cannot hold, therefore, that the trial judge abused her discretion in refusing to disqualify herself.

D. *Ortiz's Right To A Timely Trial, Pursuant to HRPP Rule 48, Was Not Violated.*

Ortiz argues that this court's memorandum opinion "was final upon its filing on January 26, 1998" and that, inasmuch as his trial did not commence until August 10, 1998, the provisions of HRPP Rule 48(b)(3), *see supra* note 2, were violated. Because this court did not file its judgment on appeal until March 3, 1998, Ortiz's argument is without merit.

■■■ Appellate jurisdiction in Hawai'i does not terminate until the appellate court files its judgment on appeal. *McCarthy v. Jaress*, 6 Haw.App. 143, 146, 711 P.2d 1315, 1318 (1985); *see also* Hawai'i Rules of Appellate Procedure (HRAP) Rules 36 (1996) and 41(b) (1995). Consequently, during the period between January 26, 1998 and March 3, 1998, the circuit court had no jurisdiction over Ortiz's case, and could not schedule Ortiz's trial. Furthermore, until the judgment on appeal was filed on March 3, 1998, Ortiz remained a convicted criminal and had no right to a new trial.

Less than six months elapsed between March 3, 1998, the date on which judgment on appeal was filed, and Ortiz's trial on August 10, 1998. Accordingly, we hold that Ortiz's right to a timely trial, pursuant to the provisions of HRPP Rule 48, were not violated.

E. *Ortiz Has Failed Properly To Preserve His Contention That The Circuit Court Committed Reversible Error In Admitting Evidence Pertaining To The Burglaries And Trespass With Respect To Which Ortiz Had Previously Been Acquitted.*

Ortiz argues that the prosecution should not have been permitted to "re-litigate the issue of whether [Ortiz] was present at the burglaries and/or participated in burglarizing the two homes and stealing items from them," where he had previously been acquitted of the burglaries. We need not resolve this particular issue, because Ortiz has waived any errors regarding the admission of evidence of past burglaries by having failed to comply with the applicable Hawai'i Rules of Appellate Procedure (HRAP) (1995).

Under HRAP Rule 28(b)(4)(B), we require appellants to provide, among other things, the following:

(4) A concise statement of the points on which appellant intends to rely, set forth in separate, numbered paragraphs. Each point shall refer to the alleged error committed by the court or agency upon which appellant intends to rely. The *point shall show where in the record the alleged error occurred and where it was objected to* and, where applicable, the following:

(A) When the point involves the admission or rejection of evidence, there shall be included a *quotation of the grounds* urged at the trial for the objection and the *full substance of the evidence* admitted or rejected.

(Emphases added.)

In the section of his opening brief entitled "Statement of Points," Ortiz failed specifically to identify *any* evidence admitted at trial regarding the burglaries of which he had been acquitted.[18] He did not show where in the record any such evidence had been admitted or where it was objected to, and he likewise failed quote the grounds urged at trial for the objection. " '[F]ailure to comply with HRAP [Rule] 28(b)(4) is alone sufficient to affirm the judgment of the circuit court.' " *Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 235, 948 P.2d 1055, 1076 (1997) (quoting *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994)). Inasmuch as Ortiz's failure to comply with HRPP Rule 28(b) leaves this court without any basis upon which to judge the

___

**18.** Likewise, Ortiz failed to point to any such evidence in the sections of his brief entitled "Questions Presented On Appeal" and "Arguments."

merits of his argument regarding the admission of evidence regarding the burglaries of which he had previously been acquitted, we will not review it.

### F. *The Circuit Court Did Not Err In Refusing To Give Ortiz's Proposed Jury Instruction No. 2.*

Ortiz argues that "the trial court committed reversible error in refusing to give a requested instruction relating to the unanimity of jurors on the act constituting the offense." Specifically, Ortiz contends that "in the case at bar, the single count of theft subsumed the separate and distinct acts of theft from the Masulit residence and the theft from the Johnson [residence]. Without a specific unanimity instruction[,] it can[ ]not be said th[at] all the jurors agreed that Ortiz was guilty of theft of Masulit's property or Johnson's property." Given controlling Hawai'i precedent, Ortiz's argument is unpersuasive.

■ This court has held that,
when separate and distinct culpable acts are subsumed within a single count ...—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proven beyond a reasonable doubt.

*Arceo*, 84 Hawai'i at 32–33, 928 P.2d at 874–75.

■ Ortiz is correct that there are two episodes that could be deemed "separate and distinct culpable acts." In the present matter, Ortiz was charged with having obtained or exerted control over "possessions belong-

ing to Arlene Awa–Masulit *and/or* Jeff Johnson, having a value which exceeded $300.00, with intent to deprive Arlene Awa–Masulit *and/or* Jeff Johnson of the property[.]" (Emphases added.) (Capitalization omitted.) Although couched in the complaint as a single count of theft, two culpable acts were in fact charged—the theft of Masulit's property and the theft of Johnson's property.[19]

The record reflects, however, that the prosecution effectively made an election regarding the specific conduct upon which it was relying to establish the theft charge. No attempt was made at trial to demonstrate that Ortiz was ever in the vicinity of Johnson's house. The prosecution adduced no evidence of the fair market value of Johnson's stolen possessions. Indeed, in its closing argument, *see supra* section I.B, the prosecution expressly conceded that "[t]here was no testimony as far as the ... value of the items [stolen] from ... Johnson's house." Thus, the prosecution argued to the jury that it might rely on the value of Masulit's property alone, or on a combination of Masulit's and Johnson's property. The prosecution made *no* effort to develop the facts necessary to establish a violation of HRS § 708–831(b)(1) with regard to the theft of Johnson's property. Accordingly, we hold that the prosecution effectively made an election, in satisfaction of the requirements set out in *Arceo*. Cf. *Maumalanga*, 90 Hawai'i at 64, 976 P.2d at 378 (where no effort made by the prosecution to develop facts necessary to establish violation of relevant charge with regard to one of two distinct culpable acts, prosecution effectively made an election for *Arceo* purposes). Inasmuch as the prosecution satisfied the requirements of *Arceo*, the circuit court did not err in refusing to give the specific unanimity instruction requested by Ortiz.

### G. *The Circuit Court Did Not Reversibly Err In Refusing to Give Ortiz's Proposed Jury Instructions Nos. 3, 4, and 5.*

■ Ortiz's final argument is that "the trial court committed reversible error in re-

---

19. We realize that some or all members of the jury might have found that Ortiz committed the theft of *both* Masulit's and Johnson's property. Inasmuch as the prosecution conceded, however, that it had adduced no evidence of the value of Johnson's property, a consideration of the combination of Masulit's and Johnson's property could not have affected the jury's verdict.

fusing to instruct the jury that they must accept[,] as conclusively proved, that defendant did not commit the burglaries of or the trespasses on the premises; and refusing to instruct that defendant had been acquitted of the burglaries and trespasses." Ortiz's proposed jury instructions, however, were incorrect as a matter of law. Ortiz's acquittal did not conclusively *prove* anything. In fact, quite the opposite is true. Ortiz's acquittal simply indicated that the prosecution *failed* to prove burglary and trespass beyond a reasonable doubt. *See, e.g.,* HRS § 701–115 (1993) (providing in relevant part that a "defendant is entitled to an acquittal if the trier of fact finds that the evidence ... raises a reasonable doubt as to the defendant's guilt"); *State v. Kwak,* 80 Hawai'i 297, 305, 909 P.2d 1112, 1120 (1995) (observing that a defendant may move for acquittal "on the grounds that the prosecution has[s] *not* proved a necessary element" (citation omitted) (brackets in original) (emphasis added)). Accordingly, we cannot hold that the circuit court erred in failing to instruct the jury regarding Ortiz's acquittal of burglary and trespass.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate Ortiz's judgment, guilty conviction, and sentence, and remand the matter for a new trial.